**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DONALD JORDAN, #B66331,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-cv-00305-NJR** |
| | ) | |
| **JACQUELINE LASHBROOK,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court for consideration of Plaintiff Donald Jordan's request for a preliminary injunction. (Docs. 6 and 19). For the reasons set forth below, relief is denied at this time, but Jordan may renew his request if it becomes necessary to do so during the pending action.

### FINDINGS OF FACT

Donald Jordan is an inmate in the custody of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pontiac Correctional Center ("Pontiac"). (Docs. 1 and 18). Jordan filed this civil rights action pursuant to 42 U.S.C. § 1983 while he was incarcerated at Menard Correctional Center ("Menard") on March 14, 2019. (Doc. 1). In the Complaint, Jordan brings claims against Menard officials who failed to protect him from other inmates (including Inmate Peoples) after his status as a former government informant was revealed. Jordan seeks money damages and injunctive relief that includes: (A) a transfer to Pontiac or Stateville; (B) placement in protective custody ("PC"); (C) single cell status without a cellmate; (D) a "keep separate from" ("KSF") order with respect to Inmate Peoples; and (E) an order prohibiting retaliation by prison staff. (*Id.*).

The Court screened the Complaint and allowed Jordan to proceed with the following claims:

> **Count 1:** John Baldwin, Jacqueline Lashbrook, Officer Purdue, Officer Lauer, Officer Taylor, Officer McCarthy, and Officer Childs failed to protect Jordan from a known risk of harm, in violation of the Eighth Amendment, when they denied his request for protective custody after Menard inmates learned of Jordan's status as a former government informant on and after May 2018.

> **Count 2:** John Baldwin, Frank Lawrence, Krista Alsup, Officer Lauer, Officer Taylor, Officer Gee, and Officer Childs failed to protect Jordan from a known risk of harm, in violation of the Eighth Amendment, when they denied his request for protection (including a "keep separate order") from Inmate Peoples and determined his PREA complaint was unfounded on and after January 31, 2019.

(Doc. 11, pp. 9-10). Five other claims (Counts 3, 4, 5, 6, and 7) were dismissed at screening. (*Id.*). Jordan's request for interim relief was separately docketed as a Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 6) and scheduled for a hearing. Jordan filed a Supplemental Motion (Doc. 19) prior to the hearing.

### *Motion Hearing (Docs. 6 and 19)*

At the hearing on April 4, 2019, Jordan testified that he transferred to Pontiac and was placed in PC on or around March 20, 2019—less than a week after filing the Complaint. For reasons unknown to the Court, Inmate Peoples transferred to Pontiac as well and was placed in a cell near him. But Jordan testified that the two inmates had gone "their own way," and he expressed no concerns about Inmate Peoples or anyone else. Jordan also indicated that his personal property was initially confiscated by Menard officials during his transfer and returned before the hearing. Given this testimony, the Court denied Jordan's TRO request without prejudice, and Jordan has not renewed the request. (Doc. 22). The Court deferred a decision on the preliminary injunction until Defendants responded. (Doc. 23).

### Defendants' Response (Doc. 40)

Defendants filed a Response to the Motions for Preliminary Injunction on June 17, 2019. (Doc. 40). They characterized several of Jordan's requests as moot, including his request for a prison transfer and placement in PC. (*Id*. at pp. 3-4). Defendants further argued that Jordan failed to satisfy the requirements for obtaining preliminary injunctive relief with respect to his request for a single cell with no cellmate and a KSF order with respect to Inmate Peoples. (*Id*. at pp. 3-5). And his remaining requests for relief—*i.e.*, to stop retaliation by Menard staff or misconduct involving non-parties—exceed the scope of this action. (*Id*. at pp. 4-5). Given the mootness claim, the Court ordered Jordan to file a reply identifying what, if any, requests are moot.

### Plaintiff's Reply (Doc. 46)

In the Reply filed July 15, 2019, Jordan confirmed that he is still housed in Pontiac's PC. (Doc. 46, p. 1). And, although he remains in a cell without a cellmate, Jordan would like to formalize this arrangement by receiving single cell status. (*Id*. at pp. 2-3). He believes this formal designation is necessary to avoid an assault like one he endured at Menard. (*Id*. at p. 3). Jordan also still seeks a KSF order from Inmate Peoples. (*Id*. at p. 2). He reported harassment and threats by this inmate on or around April 17, 2019. (*Id*.). At the time, the two inmates were housed next to (or near) one another. (*Id*.). Pontiac officials (Lieutenant Boland and Sergeant Lewis) responded to Jordan's complaints by moving him to another gallery, and this "relieved the frequent harassment, but not completely." (*Id*.). Jordan offers no specifics about ongoing harassment by Inmate Peoples and indicates that "as long as Inmate Peoples is not on the same gallery with him[,] there shouldn't be a[ ] problem." (*Id*.). He has not attempted to obtain a KSF from Pontiac officials since transferring to the facility in March 2019. (*Id*.).

In order to obtain a preliminary injunction, a plaintiff must show that (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the preliminary injunction. *See Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citing *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007)). If those three factors are shown, the Court must undertake an equitable balancing of harm to the parties and the public interest if the injunction is granted or denied. *Merritte*, 561 F. App'x at 547 (citing *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999)). The greater the likelihood of success on the merits, the less significant the likelihood the harm must be to the plaintiff. *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).

### *Likelihood of Success on the Merits*

In order to succeed on his two deliberate indifference claims, Jordan must show that he was incarcerated under conditions posing a substantial risk of serious harm and that the defendants acted with "deliberate indifference" to that danger. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). With regard to Count 1, the allegations in the Complaint indicate that the following individuals were aware of and disregarded a known risk of injury to Jordan at Menard on or after May 2018, when Gangster Disciples, Latin Kings, and Vice Lords threatened him, extorted money from him, and assaulted him after identifying him as a former government informant: Baldwin, Lashbrook, Purdue, Officer Lauer, Officer Taylor, Officer McCarthy, and Officer Childs. With regard to Count 2, the allegations in the Complaint indicate that the following individuals were aware of and disregarded Jordan's complaints about the serious risk of danger posed by Inmate Peoples on or after January

31, 2019: John Baldwin, Frank Lawrence, Officer Lauer, Officer Taylor, Officer Gee, Krista Alsup, and Officer Childs. At this early stage, the Court finds that Jordan has more than a negligible chance of establishing both elements of these claims in the underlying case.

### Inadequate Remedy At Law

In order to obtain preliminary injunctive relief, Jordan must also show the absence of an adequate remedy at law; this is a precondition to any form of equitable relief. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). But Jordan has not demonstrated the absence of an adequate remedy. In this particular case, Pontiac's grievance procedure remains available to Jordan. He discloses few, if any, formal efforts to invoke the process. He complained (perhaps only informally) about Inmate Peoples in April 2019, and he admits that Pontiac officials responded appropriately to his complaints by separating the two inmates. Although he refers to his ongoing need for formal single cell status and a KSF order, Jordan discloses no efforts at Pontiac to apply for either. He also points to no impediment to using the process to obtain this relief. To the extent Jordan has invoked Pontiac's grievance procedure, it has been both efficient and effective. To the extent he has chosen not to use available procedures, Jordan cannot claim that he lacks access to an adequate remedy. This is true, even if Jordan invoked the procedure unsuccessfully at Menard.

### Irreparable Harm

The irreparable harm requirement is intended to eliminate those cases in which the plaintiff can wait until the end of trial to get relief, even where the ultimate relief sought is equitable. *Roland Mach. Co.*, 749 F.2d at 386. Interim injunctive relief is only available if the plaintiff will suffer irreparable harm before final judgment is entered. *Id.* Jordan acknowledges that he has received much of the relief he initially requested (*i.e.*, a prison transfer, PC, a single cell, no cellmate, and

separation from Inmate Peoples). Jordan has not demonstrated, or in fact even hinted, that he faces immediate danger or irreparable harm. By his own admission, Jordan is suffering no harm and discloses no anticipated changes to his circumstances.

### *Equitable Balancing*

Because Jordan has not satisfied the first three requirements for preliminary injunctive relief, it is not necessary to balance the harm to the parties and the public interest if injunctive relief is granted or denied. *Merritte*, 561 F. App'x at 547 (citing *Korte*, 735 F.3d at 665). With that said, the scales tip in favor of denying relief.

Issuing a preliminary injunction is contrary to the public interest. Injunctions are considered a drastic form of relief because they intrude into the normal administration of the prisons. Prison officials are in the best position to make decisions that impact the day-to-day operations of their facilities. *Sandin v. Conner*, 515 U.S. 472, 482 (1995) (discouraging involvement of federal courts in daily operations of prisons). The Court finds that Pontiac officials are in the best position to make decisions regarding Jordan's placement.

Moreover, the Court can discern no benefit to either party of interfering in these decisions. Jordan is no longer housed at Menard, where his claims arose. Most of his requests for injunctive relief appear to be moot because he no longer faces the conditions that gave rise to his requests. *Higgason v. Farley*, 83 F.3d 807 (7th Cir. 1996). He does not anticipate returning to Menard or facing the same conditions. *Id*. To the extent he has encountered problems at Pontiac, officials have addressed his concerns. If new concerns arise and are not addressed, Jordan may have a separate claim against Pontiac officials. Based on review of Documents 1, 6, 19, 40, and 46, however, the Court finds insufficient grounds to issue a preliminary injunction.

For the reasons set forth above, Jordan's requests for preliminary injunctive relief in the Complaint (Doc. 1), Motion for Preliminary Injunction (Doc. 6), and Supplemental Motion (Doc. 19) are **DENIED without prejudice**. Because the Court previously denied Jordan's related requests for a TRO in Documents 6 and 19, the Clerk is **DIRECTED** to **TERMINATE** both motions. The Motion for Leave to File a Response to Court Order 46 (Doc. 48) is also **DENIED**.

**IT IS SO ORDERED.**

**DATE:  August 19, 2019**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**