IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD JORDAN,

                Plaintiff,

v.

JACQUELINE LASHBROOK, FRANK
LAWRENCE, MATTHEW PURDOM,
JOHN BALDWIN, COREY LAUER,
CHARLES TAYLOR, NATHAN
McCARTHY, SHAUN GEE, KRISTA
ALSUP, and BRYAN CHILDS,[1]

                Defendants.

Case No. 19-cv-305-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (Docs. 54, 55, 59). Plaintiff Donald Jordan's response was due October 28, 2019; he failed to file a timely response or any response at all as of today's date. In fact, the Court has heard nothing from Jordan for almost a year (*see* Doc. 62). The Court considers Jordan's failure to respond an admission of the facts of Defendants' motion. SDIL Local Rule 7.1(c). *See also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995) (a failure to respond constitutes an admission that there are no undisputed material facts).

### BACKGROUND

On March 14, 2019, Donald Jordan, an inmate with the Illinois Department of

---

[1] Lauer, Taylor, McCarthy, Gee, and Childs have identified themselves by their proper names: Corey Lauer, Charles Taylor, Nathan McCarthy, Shaun Gee, and Bryan Childs. The Clerk is DIRECTED to CORRECT the docket to reflect Defendants' proper names.

Corrections ("IDOC") who is currently housed at Pontiac Correctional Center ("Pontiac"), filed his Complaint pursuant to 42 U.S.C. § 1983 alleging Defendants failed to protect him from harm while he was housed at Menard Correctional Center ("Menard") (Docs. 1 and 11). Jordan was allowed to proceed on the following claims:

> Count 1:   Defendants Lashbrook, Purdom, Baldwin, Lauer, Taylor, McCarthy, and Childs failed to protect Jordan from a known risk of harm, in violation of the Eighth Amendment, when they denied his request for protective custody after Menard inmates learned of Jordan's status as a former government informant on and after May 2018.

> Count 2:   Defendants Lawrence, Baldwin, Lauer, Taylor, Gee, Allsup, and Childs failed to protect Jordan from a known risk of harm, in violation of the Eighth Amendment, when they denied his request for protection (including a "keep separate order") from Inmate Peoples and determined his PREA complaint was unfounded on and after January 31, 2019.

Defendants argue that Jordan failed to exhaust his administrative remedies on either claim prior to filing suit. They point to a number of grievances that he filed but either did not fully exhaust or failed to include allegations against the Defendants. The relevant grievances are set forth as follows:

## A. Grievances Submitted to the Administrative Review Board ("ARB")

**July 12, 2018 Grievance**: Jordan submitted a grievance regarding protective custody directly to the ARB. The grievance alleged that Jordan was housed in segregation on investigative status from July 10-12, 2018 and was not seen by Internal Affairs to inform him why he was under investigation (Doc. 55-2, pp. 24-25). He told the Gallery Officer Campbell that he needed to speak to Internal Affairs. He also flagged down McCarthy, but he informed Jordan that he did not have time to talk to him. He wanted to report to Internal Affairs that he was beat

and raped by his cellmate (*Id*. at p. 25). He also noted that he requested protective custody because his wife wrote a book labeling him an informant (*Id*.). The ARB received the grievance on July 16, 2018. It was denied because the prison properly investigated Jordan's claims under the Prison Rape Elimination Act ("PREA") and found this claims unsubstantiated (*Id*. at p. 23). The ARB's response noted that the grievance was sent to Internal Affairs to determine if the request for protective custody was justified (*Id*.).

**July 18, 2018 Grievance**:   This grievance was also submitted directly to the ARB (Doc. 55-2, pp. 30-31). Jordan again claimed that he tried to report the rape to Internal Affairs but was unable to contact them (*Id*. at p. 31). The gallery officer stopped McCarthy and told him that Jordan wanted to speak with him, but McCarthy said he was too busy (*Id*.). Internal Affairs did finally interview him, but he learned he was charged in connection with the attack. He asked the ARB to release him from segregation and place him in protective custody (*Id*. at p. 30).

**January 20, 2019 (No. 618-1-19)**:   This grievance requested protective custody (Doc. 55-2, pp. 17-18). Jordan indicated he was in fear for his life from his cellmate and mentioned the June assault. He noted that mental health was not helping him and he could not sleep due to the fear of being in a cell with another inmate who might hurt him (*Id*. at p. 17). Internal Affairs officers Taylor and Childs informed his prior cellmate, the one that assaulted him previously, that Jordan informed them what the cellmate did. Jordan believed those comments placed him in further danger (*Id*. at p. 18). The grievance was fully exhausted at both the institutional level and the ARB (*Id*. at pp. 15-16). The ARB found the request for protective

custody moot because cell assignments were an administrative decision (*Id*. at p. 15).

**February 20, 2019**: This grievance was labeled an "administrative notice" regarding PREA violations (Doc. 55-2, pp. 6-7). He alleged that "Menard Correctional Center administration" retaliate against inmates, including himself, who file PREA complaints (*Id*. at p. 6). Jordan was placed with an inmate named "G-Money" who threatened to rape him like a previous cellmate (*Id*. at p. 7). His PREA report for the previous assault was deemed bogus, he was treated like the perpetrator, and his witnesses were intimidated. He requested that these improper actions stop. The grievance was returned because it lacked a counselor or grievance officer response (*Id*. at p. 5).

**Grievance 139-2-19**:   On March 21, 2019, the ARB received a response from the grievance officer for a grievance submitted February 14, 2018 (Doc. 55-2, p. 3). The actual grievance was not attached. The grievance response was returned to Jordan with a note that the ARB could not process it without the actual grievance (*Id*. at p. 2). The grievance officer response noted that three grievances were received dated: February 7, 2019, February 8, 2019, and February 12, 2019 (*Id*. at p. 3). The grievances indicated that while in protective custody G-Money told Jordan that he controlled the phones and threatened Jordan with rape because he refused to participate in homosexual activity (*Id*.). Internal affairs interviewed Jordan about a PREA claim and G-Money threatened Jordan after the interview. The grievance response noted that Internal Affairs investigated the PREA claims and threats from Inmate Peoples, but the allegations were unfounded.

**B. Institutional Grievances**

In addition to the grievances sent to the ARB, Defendants identified a number of grievances submitted at the institutional level.

**November 29, 2018 (No. 493-11-18)**: This grievance was marked as an emergency and received by the warden on November 30, 2018. The grievance indicated that Jordan was denied protective custody. He alleged that he needed protective custody because his ex-wife outed him as an informant in her autobiography (Doc. 1, pp. 107-108). He was previously assaulted by a cellmate and a number of gang members told him to go to protective custody or he would be killed (*Id*. at p. 108). The grievance was deemed not an emergency on December 3, 2018, and returned to Jordan on December 4, 2018 (*Id*. at p. 107; Doc. 59, p. 4). There is no record of the grievance being pursued through the normal grievance process (Doc. 59, p. 4).

**December 6, 2018 (No. 124-12-18)**:   Another emergency grievance was received on December 7, 2018 (Doc. 1, pp. 99-100; Doc. 59, p. 4). The grievance noted that it was the same grievance as Jordan's November 29 grievance but that he was submitting it as a regular grievance (Doc. 1, p. 99). It was returned to him as a duplicate grievance (Doc. 1, p. 97; Doc. 59, p. 4).

**February 7, 2018 (No. 139-2-19/2); February 8, 2018 (No. 139-2-19/1); February 12, 2018 (No. 139-2-19/3)**: These three grievances were deemed an emergency and were combined by the grievance office. The February 7 and 8 grievances alleged that G-Money (Inmate Peoples) told Jordan that he controlled the phones. He told Jordan that he knew about the prior rape and if Jordan was not careful he would

rape him (Doc. 55-3, pp. 3-6). G-Money asked Jordan to give him commissary items and made sexual advances. The February 12, 2018 grievance alleged that Internal Affairs officer Taylor interviewed Jordan regarding his PREA complaint against Inmate Peoples (Doc. 55-3, pp. 7-8). After the interview, Peoples threatened Jordan in front of Taylor, Kempher, and the cellhouse sergeant. He asked his counselor for a "Keep Separate From" form to give to Taylor because he previously handled his PREA complaint and did so appropriately (*Id*. at p. 8). The grievances were combined and denied by grievance officer Kelly Pierce and Frank Lawrence (Doc. 55-3, p. 1; Doc. 1, pp. 103-105). Internal Affairs investigated the threats made by G-Money (Inmate Peoples) and found the threats unfounded (*Id*.).

**January 20, 2019 (No. 430-1-19/1)**: This is a duplicate of the January 20, 2019 emergency grievance but this version is not marked as an emergency. It was received by clinical services on January 23, 2019. On January 29, 2019 it was received by the counselor who responded on February 4, 2019. The counselor responded that his PREA complaint from July was found to be unsubstantiated and Jordan was being seen by mental health staff every 60 days (Doc. 55-3, p. 9).

**January 19, 2019 (No. 430-1-19/2)**: The grievance alleges that he was previously kicked out of protective custody by the ARB on October 25, 2018 and re-signed into protective custody on November 11, 2018. He was interviewed by the counselor on November 13, 2018 and he told her about his ex-wife's book naming him as a government informant (Doc. 55-3, pp. 11-12). The counselor indicated that she would forward the materials to Internal Affairs, but the grievance notes that he had not been interviewed by Internal Affairs at the time he submitted his

grievance. The counselor responded that he was approved for protective custody by the warden.

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by

a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Bentz was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This

provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the Chief Administrative Officer ("CAO"), he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed

grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

### A. McCarthy

There are two grievances relevant to the claims against McCarthy. Jordan's July 12, 2018 grievance was properly submitted directly to the ARB because it dealt with a protective custody issue. *See* 20 Ill. Admin. Code § 504.870(a)(1). Thus, it was fully exhausted. The grievance mentioned that he tried to talk to McCarthy while in segregation in order to explain that he had been assaulted by his cellmate and to seek protective custody (Doc. 55-2, pp. 24-25). As Defendants point out, however, this grievance relates to actions by McCarthy *after* Jordan was assaulted by his cellmate in June 2018. His Complaint, on the other hand, alleges that McCarthy failed to protect him

from the June 2018 assault. Although exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). But Jordan's grievance relates to actions McCarthy took after the assault; it does not put prison officials on notice that he requested protective custody from McCarthy prior to the assault. Thus, the grievance did not exhaust his claims against McCarthy.

Jordan submitted another grievance to the ARB dated July 18, 2018 (Doc. 55-2, pp. 30-31). This grievance was also submitted directly to the ARB. It is not clear whether the ARB ruled on the grievance or returned the grievance to Jordan for lacking a counselor and grievance officer response, although the grievance also sought protective custody (*Id*. at p. 1). In any event, the grievance also alleged that he tried to talk to McCarthy while he was in segregation after the assault. The grievance does not allege that McCarthy denied him protective custody prior to the assault. Thus, it also cannot exhaust his claims against McCarthy.

Because no other grievances include any allegations against McCarthy, he is entitled summary judgment.

### B. *Taylor*

Two of Jordan's many grievances included allegations against Taylor. Jordan's January 20, 2019 grievance was fully exhausted with the ARB.[2] The grievance requested

---

[2] Under their section entitled "Facility Grievances", Defendants argue that the January 20, 2019 grievance (618-1-19) was not appealed to the Administrative Review Board and, thus, not

to be placed in protective custody with a cellmate that will not harm him (Doc. 55-1, pp. 17-18). It indicated that his PREA complaint regarding the June 2018 assault was ignored and he was afraid of every cellmate that was placed with him due to being unable to cope with the previous assault (*Id*. at p. 17). He noted that Taylor and Childs told the cellmate that assaulted him that Jordan informed on the cellmate (*Id*. at p. 18). Although the grievance included allegations about Taylor, it did not include any allegations relevant to the claims in the Complaint. The claims against Taylor are that he failed to provide him with protective custody prior to the June 2018 assault and that he denied his request to "keep separate from" and his PREA complaint against Inmate Peoples. The grievance dealt with neither of these issues, but instead focused on his concerns about Taylor telling the inmate that assaulted him about Jordan's actions. Nothing in the grievance puts the prison on notice that Taylor denied his request for protective custody prior to the assault by his cellmate or denied any request related to Inmate Peoples. As such, it does not exhaust the claims against Taylor.

Jordan's February 12, 2019 grievance mentioned Taylor in regards to the PREA complaint against Inmate Peoples (Doc. 55-3, pp. 7-8). The grievance indicated that Taylor interviewed Jordan about his PREA complaint and after the interview Inmate Peoples threatened Jordan in front of Taylor (*Id*. at p. 7). Although the grievance includes allegations relevant to the Complaint, Jordan failed to properly exhaust this grievance. The grievance was submitted properly through the institution. It was combined with two other related grievances, his February 7 and 8 grievances, and deemed moot by the

exhausted (Doc. 55, p. 16). The January 20, 2019 grievance was submitted to the ARB, however, and fully exhausted (Doc. 55-2, pp. 15-18).

institution (Doc. 55-3, p. 1). But this grievance was not properly exhausted with the ARB. Jordan sent the grievance officer response to the ARB but failed to attach the grievances themselves. The ARB refused to review the response, noting that the grievance was not properly attached (Doc. 55-2, pp. 2-3). The grievance, thus, was properly rejected for failing to comply with the ARB's rules. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole,* 438 F.3d at 809. Because the ARB did not review the grievance on the merits and properly rejected it on technical grounds, the grievance was not exhausted. Nothing in the record suggests that Jordan resubmitted the grievance for the ARB's review. Accordingly, Taylor is also entitled to summary judgment.

### C. Childs

The only grievance on file that identifies Childs is Jordan's January 20, 2019grievance. As to Childs, the grievance alleged that he told the cellmate that sexually assaulted him in June 2018 that Jordan informed officials about the assault. The grievance does not serve to put the officials on notice of any of the allegations in the Complaint. It does not indicate that he requested protective custody from Childs prior to the June 2018 assault, nor does it discuss his "keep separate from" request or PREA complaint against Peoples. Because the grievance does not relate to any of the allegations in the Complaint, it does not exhaust his claims against Childs. Childs is therefore entitled to summary judgment.

### D. Allsup, Gee, Lashbrook, Lauer, Lawrence, Purdom, and Baldwin

The remaining Defendants are also entitled to summary judgment. None of

Jordan's many grievances mentions Allsup, Gee, Lashbrook, Lauer, Lawrence, Purdom, and Baldwin. His February 7, 8, and 12, 2019 grievances discussed issues with "G-Money" but, as the Court has already discussed, the grievances were not properly exhausted because Jordan failed to include the grievances when he submitted the grievance officer response to the ARB (Doc. 55-2, pp. 2-3; Doc. 55-3, pp. 1-8). His February 20, 2019 grievance also mentioned his PREA report against Inmate Peoples and stated that "Menard Correctional Center administration" were retaliating against him and others for filing reports, but the grievance was not fully exhausted because he failed to include the counselor and grievance officer response when he submitted it to the ARB (Doc. 55-2, pp. 5-7). There are no other grievances in the record which could serve to exhaust his claims, nor has Jordan pointed to any grievance that would exhaust the claims against Allsup, Gee, Lashbrook, Lauer, Lawrence, Purdom, and Baldwin. Because Jordan's grievances do not mention these individuals, they are also entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Docs. 54, 55) is **GRANTED**. The claims against Defendants are **DISMISSED without prejudice** for Jordan's failure to exhaust his administrative remedies. The Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   June 26, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**